UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL DIACK and PIPE DOCTOR
PLUMBING, HEATING, AND AIR
CONDITIONING, INC.,

                Petitioners,                        **REPORT AND**
                                                           **RECOMMENDATION**
                                                            22-CV-00164 (GRB) (JMW)

       -against-

NAVIEN, INC.,

                Respondent.
------------------------------------------------------------X
**WICKS,** Magistrate Judge:

       This case, at its core, concerns the enforceability of a click-wrap arbitration clause. Before the Court, however, is a more rudimentary issue—whether the Court has subject matter jurisdiction over Petitioners', Michael Diack and Pipe Doctor Plumbing, Heating, and Air Conditioning, Inc., claims removed by Respondent Navien, Inc. from an Article 75 proceeding initiated in New York state court. Petitioners move to remand back to state court, contending that Navien has not established that the amount in controversy exceeds $75,000 and that, in any event, Article 75 proceedings are not removable. Navien opposes the motion and wishes to proceed in federal court. On February 1, 2022, the Honorable Gary R. Brown referred Petitioners' motion to the undersigned for a Report and Recommendation. For the reasons that follow, the undersigned respectfully recommends that Petitioners' motion be denied.

### I.    BACKGROUND

       Diack is the owner of Pipe Doctor, a company that provides plumbing services in New York. (DE 1-2 at 5.) Navien operates an installation, maintenance, and repair network for tankless water heaters. (*Id.* at 6.) Independent contractors can apply to Navien to serve as Navien Service Specialists tasked with installing and repairing Navien products. (*Id.* at 6.) In 2014, Pipe Doctor, through Diack, applied to be a Navien Service Specialist in New York. (*Id.*) Pipe Doctor renewed this application in 2019. (*Id.*)

       Diack alleges that he discovered serious defects in Navien products in early 2021. (*Id.* at 7.) These alleged defects consisted of "internal leakage of carbon monoxide and combustion gasses inside the cabinet

of multiple models of Navien systems even when properly installed." (*Id.*) Diack took to YouTube in a campaign to alert the public of his alleged concerns with Navien's products. (*Id.*)

In response, Navien initiated an arbitration against Petitioners before JAMS. (*Id.* at 8; *see* DE 1-1.) In its arbitration demand, Navien alleged that Petitioners made "repeated false and disparaging comments regarding Navien on various social media platforms," (DE 1-1 at 10), which "have resulted in major financial and other harm to Navien," (*id.* at 15). Navien further alleged in its arbitration demand that Petitioners expressly agreed to the Navien Rewards Program Terms and Conditions, which provide that all claims or controversies relating to the Rewards Program are subject to mandatory arbitration administered by JAMS. (*Id.* at 19.) While Petitioners agree that Pipe Doctor enrolled in the Navien Rewards Program in 2017, they deny agreeing to any arbitration agreement in connection with the application. (DE 1-2 at 6.)

On December 12, 2021, Petitioners commenced an Article 75 Proceeding, pursuant to New York Civil Practice Law and Rules Section 7503(b), in New York state court seeking a permanent stay of Navien's arbitration proceedings. (*Id.* at 4–18.) On December 16, 2021, the state court issued a temporary restraining order ("TRO") staying the arbitration proceedings. (*Id.* at 2–3.) On January 11, 2022, Navien timely removed the matter to this Court. (DE 1.) Then, on January 13, 2022, Petitioners filed an emergency motion for a pre-motion conference seeking (1) an extension of the state court's TRO; (2) a preliminary injunction preventing the arbitration from moving forward; and, as relevant here, (3) to have this matter remanded to state court. (DE 6.) That same day, Judge Brown issued an order directing Navien to show cause as to why this case should not be remanded to state court. (Electronic Order dated Jan. 14, 2022.) Navien responded to the order to show cause on January 17, 2022 (DE 7) and Petitioners filed their reply on January 19, 2022 (DE 10). On February 1, 2022, Judge Brown referred all pretrial proceedings and pending motions—including Petitioners' present motion to remand—to the undersigned for Reports and Recommendations. (Electronic Order dated Feb. 1, 2022.)

## II.   DISCUSSION

It is axiomatic that federal courts are of limited jurisdiction and "possess[] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378

(1994). Federal courts therefore may only entertain cases falling into two subject matter categories: cases involving a federal question, 28 U.S.C. § 1131, and cases where parties are citizens of different states and the amount in controversy exceeds $75,000, 28 U.S.C. § 1132. "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 378.

Defendants are entitled by statute to remove "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The Second Circuit has cautioned district courts to 'construe the removal statute narrowly, resolving any doubts against removability.'" *Nasir v. HD Supply Facilities Maint., LTD*, 19-cv-00416 (DLI) (VMS), 2021 WL 5356746, at *1 (E.D.N.Y. Nov. 17, 2021) (quoting *Lupo v. Hum. Aff. Int'l Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). The parties do not dispute that complete diversity exists here, as Diack and Pipe Doctor are citizens of New York and Navien is a citizen of California. (DE 1-2 at 5–6.) The parties sharply dispute, however, whether the amount in controversy exceeds $75,000 as required for this Court to exercise subject matter jurisdiction. A disagreement also exists as to whether a case such as this may be removed from an Article 75 proceeding in state court. The Court will address each disputed aspect of its jurisdiction in turn.

### A. Amount in Controversy

Where, as here, a case is removed from state court, "the removing party bears the burden of demonstrating that the $75,000 amount-in-controversy requirement" is met to establish diversity jurisdiction. *Cadmen v. CVS Albany, L.L.C.*, 22-CV-46 (PKC) (SJB), 2022 WL 138056, at *2 (E.D.N.Y. Jan. 14, 2022). To do so, the removing party must prove by a "reasonable probability that the claim is in excess of the statutory jurisdictional amount," $75,000. *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 297 (2d Cir. 2000) (internal quotation marks omitted) (quoting *United Food & Com. Workers Union Loc. 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)).

The jurisdictional analysis becomes somewhat more complex where the relief sought at the state level is solely injunctive in nature. "In actions like this one seeking . . . injunctive relief, 'the amount in

3

controversy is measured by the value of the object of the litigation.'" *Griggs v. Weiner*, 13 CV 3885 (KAM) (CLP), 2021 WL 4268095, at *13 (E.D.N.Y. Aug. 10, 2021) (quoting *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006)). Where the requested injunctive relief concerns an arbitration proceeding, "the court should look through to the possible award resulting from the desired arbitration, since the petition to compel arbitration is only the initial step in a litigation which seeks as its goal a judgment affirming the award." *Davenport v. Procter & Gamble Mfg.*, 241 F.2d 511, 514 (2d Cir. 1957); *see also Dr.'s Assocs., Inc. v. Hamilton*, 150 F.3d 157, 160 (2d Cir. 1998) (noting that, in assessing the amount of controversy in the context of anticipated arbitration proceedings, "the amount in controversy is the difference 'between winning and losing the underlying arbitration'") (quoting *Webb v. Investacorp*, 89 F.3d 252, 257 n. 1 (5th Cir. 1996)). Said differently, the amount in controversy in such cases is to be gleaned from "the value disputed by the parties in the underlying arbitration." *G.distributors, LLC v. Scanlon*, No. 18-cv-02101 (NSR), 2018 WL 6329444, at *4 (S.D.N.Y. Dec. 3, 2018); *see Correspondent Servs. Corp.*, 442 F.3d at 769 ("'[T]he amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested.'") (citation omitted).

Here, Navien has satisfied its burden of establishing by a reasonable probability that the value of Petitioners' claim for injunctive relief exceeds $75,000. The Court, as it must, looks forward to the possible arbitration proceeding to determine the value of the injunctive relief sought by Petitioners. Although it did not specify monetary damages in its demand for arbitration, Navien did allege that Petitioners' "false, defamatory, and disparaging statements and videos about Navien's products have resulted in major financial and other harm to Navien." (DE 1-1 at 15.) In a similar vein, and in support of its opposition to Petitioners' motion to remand, Navien relies on the Declaration of Eddie Hue[1] (the "Hue Declaration")—a purchasing and special business manager for Navien—to outline certain damages Navien seeks to recover at arbitration. (DE 8-1 at 1.) Based on his personal knowledge, Mr. Hue explains that Petitioners' alleged

---

[1] Courts may consider affidavits submitted in support or opposition to remand motions. *See Davenport*, 241 F.2d at 514 (considering affidavits submitted in support of a motion to remand to determine removability).

4

conduct, which takes centerstage in the demand for arbitration, has caused a loss of business and, in turn, has cost Navien at least $300,000 in sales revenue. (*Id.* at 1–2.) In reaching this approximate damage calculation, Mr. Hue relies on his knowledge of specific instances of customer abandonment prompted by Petitioners' alleged conduct. (*Id.* at 2–3.) The Hue Declaration satisfies Navien's burden in establishing a reasonable probability that, should Navien prevail at arbitration, Petitioners will be liable for approximately $300,000. In other words, the value of Petitioners' requested injunctive relief in *avoiding* this result at arbitration is well beyond the $75,000 jurisdictional threshold amount. Remand, therefore, is unwarranted.

Petitioners' central argument in support of their motion to remand is that Navien "has not submitted competent evidence" and therefore has not met its burden of establishing the amount in controversy requirement. (DE 10 at 17 (capitalization altered).) Specifically, Petitioners contend that the Hue Declaration should not be considered because it contains hearsay and conclusory statements, undercutting its evidentiary value. Petitioners are mistaken. As noted above, Mr. Hue, a purchasing and special business manager for Navien, has personal knowledge of Navien's lost customers and sales stemming from Petitioners' alleged conduct and, as such, is capable of approximating the damages Navien will seek at arbitration. This is precisely what he has done here by sworn declaration. Indeed, Petitioners tellingly spend their time attempting to poke holes in Navien's proffered evidence rather than produce *anything* to rebut the Hue Declaration or suggest that Navien's damages at arbitration will, in fact, fall below the $75,000 jurisdictional threshold.

In short, Navien has satisfied its burden in establishing that the amount in controversy here exceeds $75,000.

## B. Removal from an Article 75 Proceeding

In their request for a pre-motion conference, Petitioners stated that "at least some courts in this Circuit have found that removal of a special summary proceeding may be improper because there is no such summary proceeding analogue in federal court." (DE 6 at 2 n.7.) This argument is easily dispelled, however, in light of the abundance of removed diversity cases regarding arbitration awards in the Second

5

Circuit.[2]  Indeed, "[t]here is no doubt that [an Article 75 proceeding] is removable . . . based on diversity even though it is a special proceeding under CPLR [Section] 7510." *Heifetz v. Tugendrajch*, 542 F. Supp. 1207, 1207–08 (E.D.N.Y. 1982) ("Petitioner's arguments that the petition involves a proceeding that is inherently local or purely administrative, and therefore removeable, are without merit.").  Moreover, the Court finds that *Glen 6 Associates, Inc. v. Dedaj*—the sole case Petitioners rely on—is inapposite.  *Dedaj* involved a landlord-tenant dispute originally brought as a summary proceeding in New York state court and subsequently removed to federal court.  770 F. Supp. 225, 226 (S.D.N.Y. 1991).  The *Dedaj* court found that it could not exercise diversity jurisdiction because there was "[n]o authorization for summary adjudication of landlord/tenant disputes is provided in the federal rules of procedure nor in any other statute governing procedure in the district court," meaning "the summary process filed by plaintiff could not have been brought [t]here originally and as such, th[e] court lack[ed] subject matter jurisdiction."  *Id.* at 228.  *Dedaj*'s narrow holding is inapplicable here.  Federal courts often resolve disputes nearly identical to those that would be resolved in Petitioners' Article 75 proceeding.  They frequently rule on the enforceability of arbitration clauses and, as evidenced in this matter, are more than capable of granting temporary, preliminary, and permanent injunctive relief.  As such, the fact that Petitioners commenced this action as an Article 75 proceeding does not preclude this Court from exercising diversity jurisdiction over it.

\* \* \*

In sum, the Court concludes that Navien has satisfied its burden of establishing that diversity jurisdiction exists.  Accordingly, the undersigned respectfully recommends that Petitioners' motion for remand be denied.

---

[2] *See, e.g.*, *Legacy Agency, Inc. v. Scoffield*, 20-cv-5771 (JGK), 2021 WL 4155238, at *1 (S.D.N.Y. Sept. 8, 2021) (removed matter from New York state court involving cross motions to confirm and vacate arbitration award); *Odeon Cap. Grp., LLC v. Ackerman*, 149 F.Supp.3d 480 (S.D.N.Y. 2016) (denying motion to remand case back to state court Article 75 proceeding); *Maxons Restoration, Inc. v. Newman*, 292 F. Supp. 2d 477, 479–80, 484 (S.D.N.Y. 2003) (same).

### III. CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Petitioners' motion for remand be denied.

### IV. OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
        February 5, 2022

/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

7